I turn now to the last case on the calendar of the Law Offices of Marcia Kuznets, et al. v. J.R. Pension. Good afternoon, and it's just afternoon. My name is Michael Asaf, and I represent the appellants, cross-appellees in this matter. Your Honors, we have come before you today to ask you to reverse and remand Judge Batts' decision on the motion for reconsideration. In both the underlying dismissal motion and the motion for reconsideration, Judge Batts did not consider and said that she did not have to consider the five factors of Drake. And it is certainly our position, most respectfully advocated, that in a situation where the ultimate penalty is about to be imposed, which is a disenfranchisement of claims, that that requires the analysis under Drake. Certainly, to the extent that we read the law, we believe that that analysis under Drake is mandatory, but the case law says at a minimum that it makes, that the failure to conduct that analysis makes any decision that does not deal with the Drake factors certainly subject to reversal. I wanted to take you through the behavior in this case, and it seems to cry out for intervention and equitable resolution here, because none of this behavior lies at the doorstep of my client. Judge Batts says that two years had gone by with no progress in this case. And it isn't really two years. It's a period of 20 months. Once issue was joined in 2016, the Court filed its order to show cause to respond to on May 31, 2018, which is 20 months later. Throughout this process, the Court kept control of its calendar. The first conference in this matter wasn't scheduled for more than four months after the answer was filed. And then the defendants asked for an adjournment of that date, and the Court rescheduled the first conference for April 6 of 2017. So the first six months of the 20-month period were as a result of the Court's rescheduling on its own calendar and the defendants' request for an adjournment. The next conference was scheduled and held approximately four months later, July 27, 2017. That's a total of 10 months of the 20-month period. The next conference was scheduled two months later on September 21, but a joint request for adjournment was made due to the religious holidays that were then pending. That request was granted, and the next conference was scheduled for November 2. On October 25, 2017, the plaintiff asked for a discovery scheduled to be made by the judge. Judge Batts declined to issue one because she thought the case should be settled. The amount in controversy was relatively small, and she believed that the parties could settle it. But in any event, when we get to that point, 13 of the 20 months of delay are not visited or responsible. My client is not responsible for that delay. The conference on November 2 was adjourned by request of both sides in order to attempt to settle. And all during this period, in terms of the attempt to settle, the RichGAT defendants were looking for a copy of the confidential settlement agreement that my client had entered into with the non-RichGAT defendants, who we refer to in the brief as the guardian defendants. And there was a series of colloquies that went on between the parties about how that confidential settlement agreement could be disclosed. And there was an extended and protracted negotiation of a confidentiality agreement. It eventually went to the RichGAT defendants. The next conference was scheduled on December 21, 2017, but that was 15 months of the 20 months that that was happening. At the December 21, 2017 conference, the defendants were directed to outline their basis for a motion to dismiss the ERISA claims because they had said all the way through settlement that they believed that the case of Forgione applied to this matter and that this case was similar to Forgione and that it should be dismissed, notwithstanding the factual differences between the two cases. From December 21, 2017, it took almost two months. In February 18 of 2018, the letter came to my client's attorney, Mr. Schrader, along with a response to Mr. Schrader's outstanding settlement demand. And Mr. Schrader, unfortunately, did not respond to that February 18, 2018 letter that counsel sent. That February 18, 2018 letter was not disclosed to my client. And more particularly, the May letter, which counsel wrote back to the court, saying that Mr. Schrader had not responded to the February letter, was never disclosed to my client. And the order to show cause that the court issued sua sponte five days later was not sent to my client either. The fact of the matter is here that my client had the misfortune, clearly, of having this case take a turn for the worse and not being aware that this was going on. She had no notice that the case had taken such a dramatic turn. I think all of this could have been avoided if the judge had simply held a conference with parties present to discuss her, shall we say, concern, unhappiness, or direction that this case should move forward with more alacrity and purpose. My client has never met Judge Batts. Judge Batts has never laid eyes on my client and yet has issued a decision to take away my client's claims that even Judge Batts said in her decision on the reconsideration might have some merit, certainly beyond a prima facie showing. In this particular case, there were many lesser things that could have been done by Judge Batts to preserve the underlying claims and to create an incentive for the parties to act with, shall we say, more precision and more alacrity. She didn't do any of that. She went directly to the death sentence for my client without ever considering, apparently, any lesser sanctions. The case law is very clear. I think, far be it from me to take the position of a district court judge, but certainly it has been my experience over 30 years that when this sort of thing happens, two things happen first. One is that the judge brings everyone in with the parties and says in no uncertain terms, this is not going to continue. You people need to do this by a particular date or that's it. No such warning was ever made to my client in a room where it could have been understood by her, noticed by her, where she could have had the opportunity if it became clear to her, which it wasn't, that her... I've had that happen before in my career. Absolutely, Your Honor. I was going to get to that. There could be sanctions applied against the lawyer. Of course. The behavior here isn't... You have suggested that she considered that, but in any event, you are agreeing that costs or fees against counsel would be an appropriate sanction here? Absolutely, Judge. I think I don't... It's in the record that not only did Mr. Schrader not tell my client what was going on, but he didn't tell Morit Hock either. So when he finally showed up at my client's home in August to tell her that her case had been dismissed and there was only the reply on the motion for reconsideration left for her to be able to be heard, and of course we all know that you can't introduce new facts on reply, so my client's participation was largely moot at that point, she made him call the managing partner at Morit Hock in front of her and tell them what had occurred. And they promised her the sun, the moon, and the stars, and to fix this and correct Judge Batts's decision, which they felt was wrong. And I'm standing here before you today because Morit Hock cut my client loose. And that's not okay. When you hire a lawyer and you repose your faith and trust in the lawyer, even as a lawyer, if I'm hiring a specialist in ERISA law, which is enormously complex and very arcane, it's a closed bar, there are very few people that really know about this and can really articulate their positions with some measure of knowledge and perspicacity. In this particular instance, she reposed her faith and trust in a person that, as it turns out, wasn't worthy of either. And she reposed her faith and trust in a law firm that wasn't worthy of either. That's what my concern is, is that the chance of recovering fees against such counsel seemed to me to be either remote or to come only after extraordinary effort that the Court shouldn't be required to have to do to chase down a judgment like that. But in any event, I understand your point that it should have been considered. Your Honor, at the very least, apart from the — before we even got to the sanctions issue, certainly sanctioning a lawyer before the district court and requiring that lawyer to pay that sanction is something that happens all the time. And that is the kind of thing, certainly, that the Grievance Committee could get involved in if that wasn't collected and it wasn't paid with some alacrity. That would be some endangerment to the lawyer's license to practice law in this State. Mr. Schrader is no longer at Moret Hawk, but he's certainly in practice today at another firm. Moret Hawk has a thriving federal court practice. And there certainly could have been other people assigned to this case, other people who could have assisted this client who was apparently, and unbeknownst to her, in desperate need of assistance. And she didn't learn about any of this until it was too late. But if the judge had called the parties in with the attorneys and said, on the record, this is what is happening in this case, I am not happy with how this is proceeding, and these are the reasons why, and these are the things that I need to fix, my client would have had the opportunity to then assess the performance of her counsel, decide whether there was any worthwhile purpose in keeping him on the case, and get somebody in who could do the job appropriately, who could perform with some alacrity. She was never given that opportunity. Thanks very much. Much appreciated. Gave you some extra time. Okay. What do you have to say to all of that? Good afternoon. My name is Matthew Cohen. I represent defendants Jeffrey Richgatt and J.R. Pension Services, Inc. Plaintiffs commenced this action through the implementation of a contemptible tactic to copy the allegations in their complaint from another complaint that had been dismissed on a 12b6 motion. They hauled my clients into court after settling with all of the other defendants in the case in what we can deduce amounted to a stick-up. Bring us in, settle early, and then get out. From April 2017, my clients had been requesting the court's leave to file a motion for dispositive relief. We had answered the complaint and were therefore requesting the court's leave to either file a 12c motion or a motion under Rule 12h for failure to state a claim. Where did the requirement that you get the permission of the district court come from? The judge's preferences say that for dispositive motions filed after a party has answered that there's a pre-motion conference that's required to happen, and so it was my understanding, based upon those preferences, that leave from the court was required before filing such a motion. Those are so-called individual rules which are have been sharply criticized by the court of appeals as inappropriate. It's a motion to be permitted to make a motion. I know it's not your problem, but I thought the record should reflect once again the disfavor of such a procedure. Go ahead. Thank you, Judge. This Court's decision, excuse me, the Southern District's decision to dismiss this case was not made without adherence to the Drake factors, and we know that because of the Court's October 2018 decision to deny plaintiffs' motion for reconsideration of those factors. We know that the Court considered the length of the delay caused by plaintiffs' counsel's egregious conduct. We know that that delay began, at least the period of plaintiffs' noncompliance with the Court's orders began in December 2017. It continued through February of 2018 when he did not respond to our court-ordered settlement correspondence and deficiency correspondence. It continued through March when there was another status conference with the Court where we were finally able to obtain the Court's leave to file the motion that we had requested to file almost a year before that. And it continued during a period where he failed to meet, where plaintiffs' counsel failed to meaningfully engage with our office as we attempted to determine what claims, if any, they would be voluntarily dismissing from the complaint following communications in chambers with Judge Batts that that evaluation would be done on two different occasions, and it was memorialized in two different orders. We ultimately had a motion deadline of May 31st. Eight days, excuse me, nine days before that, on the eve of what I believe was Memorial Day, I finally, after I was not able to get a conclusive response from Mr. Schrader, wrote to the Court asking for clarification as to whether I could move against the entirety of the complaint as plaintiff had not given me any indication as to what claims he would be dismissing, so I knew what the scope of my motion was going to be. Plaintiffs never responded to the order. Contrary to the argument that's now before you, excuse me, plaintiffs never responded to the May 22nd letter, excuse me. Contrary to the arguments that plaintiffs now make, they were provided notice that the Court was dissatisfied with their unwillingness to engage because on May 31st, the Court entered an order to show cause as to why the case shouldn't be dismissed for lack of prosecution by virtue of plaintiff's counsel's misconduct. It's not J.R. Pension's fault that plaintiff's counsel never shared that order to show cause with his client. There was a deadline in the order to show cause to respond within 10 days. There would be no extensions, and plaintiff's counsel missed the deadline. This is not an issue of whether or not he made the plaintiffs aware of the fact that the note that the order to show cause had been entered. It was an issue of the fact that he blew a deadline that was a mandatory deadline. After the Court entered the order to show cause, plaintiff missed the deadline to respond to it. He belatedly submitted a certification to the Court suggesting that the reason for his failure to engage was because he was still investigating the purported factual bases that were at issue in this case. That came in in June of 2018. The case was filed initially in April of 2016. Presumably, plaintiffs should have been aware when he filed the case what the purported factual bases and allegations against the defendants, J.R. Pension and Jeffrey H. Gatt, were at the outset of the case, not two years later, and certainly not two years later when it created a delay of almost six months in prejudicing my client's ability to file a dispositive motion. We know that the Court considered the Drake factor of delay. We know that the Court considered the Drake factor of notice because the order to show cause was issued. And we know that the district court considered the efficacy of lesser sanctions, which is the fifth Drake factor, because, first, Judge Batts told us that she did in her order denying plaintiffs reconsideration motion. But I also know that lesser sanctions were considered because in my May 22 letter to the Court and in my opposition submission that came in in June of 2018, I asked the Court for relief in the alternative, specifically that instead of being able to move against the two remaining ERISA claims, that I be permitted to move against the entirety of plaintiff's complaint. Finding plaintiff's counsel's conduct to be so egregious, violating two scheduling orders, failing to engage with defendant's counsel, not responding to the May 22 letter, not timely responding to the order to show cause, and providing no plausible explanation for same, having considered the fact that defendants had asked for a lesser sanction, the Court considered it and opted instead to dismiss the complaint. I'm sensitive to the issues that exist as between the plaintiff and her prior counsel, but Link v. Wabash Railroad suggests that a client is chargeable with her attorney's neglect and her attorney's misconduct. The Chira decision entered by issued by this Court creates a higher bar when the litigant herself is an attorney. I can't stand before this Court and suggest what the plaintiff in this case should have done when confronted with an attorney who did not engage with her over the course of their representation, but I can stand before this Court and say that as a matter of law, she has a very high bar to be able to escape the consequences of her attorney's actions. And so for those reasons, particularly the Court's consideration of at least three of the five Drake factors expressly, we'd ask that the Court affirm the district court's decision to dismiss the complaint with prejudice. Sotomayor, may I ask you, had the Court instead opted to award you fees for the time you expended, and not that I think you need leave, but said to you, go ahead and file your dispositive motion, how would you have been prejudiced by the failure to impose any more severe sanction? Other than that dismissal would have ended the case entirely? Sure. But that's something that the Court had in its option, but I'm saying, how are you prejudiced? We have cases where defendant's sanctionable conduct has actually prejudiced a side's ability to mount its defense or call witnesses or whatever, and I wasn't sure that that was this case. Judge, I'm not sure that defendants would have been prejudiced through the imposition of fees, although I note that the district court below denied our application for fees after this case was dismissed. If that was as an award for success on the merits, whether or not that would have been warranted sanction, it could have been fees as a sanction. Judge, I'm not sure that a court is required to undertake an exhaustive review of every potential lesser sanction available. That's the South New Jersey Telephone Company case. I understand that we're reviewing it. I just wanted to make sure I hadn't missed anything in the record about further prejudice to your client. Anything more that you want us to know prejudiced your client? Other than that we had spent two years litigating the case, finally had an opportunity to move for dispositive relief against a complaint that had been copied from another action that itself was dismissed as a 12b6 motion as being found wanting, and then having to live with the case for two years while plaintiff's counsel strung us along, there's no other prejudice. Now, am I right that if the Court were at this stage of the case to think about fees, they would have to be awarded against either an attorney who's no longer in the case or a firm that's no longer in the case? Is that the state of play? There's a case that I included in my briefing to this Court, the Kluck decision from Federal Court in Texas, that imposed an award of fees pursuant to ERISA Section 1132G that was joint and several against plaintiff and her counsel. And so it was our hope that the Court would review that decision within the context of our cross-appeal of the District Court's denial of our application for attorney's fees. I see that my light is yellow, so I want to be brief. With respect to our cross-appeal, there's a Supreme Court decision that says that when a party achieves some degree of success on the merits in an ERISA claim, that's the Hart decision, that there is a five-factor test to determine whether or not it's within the District Court's discretion to make a fee award. Two of those particular factors, I think, are very relevant here. Number one — It's okay. Okay. We have your brief on that. Thank you, Judge. Thank you. May I ask you — it seems to me that there's a degree of fault on the part of the make your motion. There would not have been a two-year delay. I think — Well, you could answer that, and then I have a follow-up. I think that it was the hope of the District Court, and I know that certain content regarding this issue is in the record, so I feel comfortable saying it. There were extensive discussions regarding settlement of this case between myself and Mr. Schrader, and I believe that it was the District Court's hope that in lieu of ultimately finding the parties so far apart on settlement that they were beyond resolution, that it might push off the need to file its positive motion. Certainly, that was the position that we had been — that we had understood. And so — What I understand you're saying is that you had a sure slam-dunk winning motion. And I asked the courts leave to file that motion a number of different times and was told that I couldn't. And could I ask you, why didn't you leave Sleeping Dogs' Lie? And just file the motion? Either that or do nothing. Well, I couldn't do nothing because I had already answered the — I had already answered the complaint. Right. You had answered the complaint. And so that's it. To just continue with the litigation? Just — what more — what other obligations were there on you to engage in all of this other activity? Bill, there were no obligations on my clients to engage in settlement. But to the extent that the pleading that had been filed by plaintiffs, in our estimation, was significantly deficient, certainly it was our hope and litigation strategy that we'd be permitted to move against that complaint. The issue was that within the scheduling of the initial components of this case, we answered. And so in order to have filed a motion following the answer, it was our understanding that we required the district court's leave to do that because it was a dispositive motion post-answer. Thank you. Thank you. I have to take issue with counsel's belief that he was not given leave to file his motion because — and you'll see this in our brief — at the March 29, 2018, conference, there was an order issued by the court saying that the defendants were to file a prediscovery motion to dismiss with a May 31 deadline. That was never done. So for counsel to come and tell you that he sought leave repeatedly and didn't get it, that's not supported in the record. What was the judge referring to then in the — when in denying reconsideration she said she had considered granting leave to file a dispositive motion as a sanction? Your Honor, I would be speculating to — because it doesn't fit. The pieces don't fit. The pieces suggest that there might well have been some confusion as to whether that — whether such leave was — had been granted, was still needed to be granted, whatever. Well, certainly, Your Honors can review the record. Right, right. And you could certainly take a look to see if there was in fact confusion on that issue. I don't think that there is. I was surprised to hear this argument today. I will also say that with respect to counsel's repeated discussions about how the Again, my client hired an attorney that held himself out as an expert and then paid an additional $5,000 at that attorney's direction to hire an expert to assist with the pleading. And at this juncture, it's all well and good to say that the pleading is insufficient, but we don't have a decision in that regard yet. We don't. And we don't have any investigation of merits. Discovery has not even started in this case. But you arguably have a case for legal malpractice. Yes, Your Honor. That's what the law provides. That's the relief provided to you. In some respects, that's true. But as we sit here in a court where someone has wronged my client and my client is entitled to compensatory damages, my client is entitled to her day in court and not in a form of gotcha legal practice. Who is it that has harmed your client? The Richgad defendants harmed my client, Your Honor. How? The Richgad defendants prepared, structured, and were the architects of a pension plan that was overloaded with insurance. We're not going to the merits here. Right. Any of that. But tell us how on this record with respect to these claims on appeal, how your client – who harmed your client, if anyone? On this particular record? Yes. It would appear that her counsel did not perform. Right. As he should. So the relief that you need to have or should obtain is against prior counsel. Well, my client does have a claim against her prior counsel, but my client is also asking the three of you to allow her to have her day in court because it was taken from her. By? It was taken from her in some degree by the actions of her counsel, but in some degree by a judge who should, in my humble opinion, have told her first that this was about to happen. Issuing the order to show cause at that juncture, which was never disclosed to my client and wasn't sent to her, isn't enough. The district court should have placed a phone call to your lawyer to make sure she understood – to your client, who is a lawyer. No, Your Honor. It should have called a conference with parties. No, I know you say that and it's not unheard of, but frequently district judges are disinclined to demand the presence of a client who, after all, has designated the attorney as her agent. I mean, there's a question of how much district courts should intrude on the attorney-client relationship. Except that the second Drake factor is that the plaintiff, not the attorney, the plaintiff is given notice, that further delay will result in dismissal. And can be given notice through her designated agent. But in this particular case, Judge, it's a small thing to have a conference with parties. A small thing. Thank you very much. Thank you. We reserve the decision. We are adjourned. Court is adjourned.